

THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:


DATED: June 5, 2012

_____
Honorable Pamela Pepper
Chief United States Bankruptcy Judge


**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

**Court Minutes and Order**

| | |
|---|---|
| CHAPTER: | 11 |
| DATE: | June 4, 2012 |
| JUDGE: | Pamela Pepper |
| CASE NOS.: | 12-24840; 12-24842; 12-24848; 12-24849 (jointly administered) |
| DEBTORS: | K&K Holdings, Granville, WI, LLC; K&K Holdings North Ave, WI, LLC; K&K Holdings, LLC; K&K Holdings, 1699 Woodfield Ave, LLC |
| NATURE OF HEARING: | (1) BMO Harris Bank, N.A's motion to transfer venue of case no. 12-24848 |
| | (2) Inland Bank and Trust's motion to transfer venue of case no. 12-24848 |
| | (3) Old Second National Bank's motion to transfer venue of case no. 12-24848 |
| | (4) Golden Eagle Community Bank joinder motion to transfer venue |
| | (5) The Northern Trust Company's joinder motion to transfer venue |
| | (6) Debtors-in-possession's response to the motions to transfer venue |
| | (7) BMO Harris Bank, N.A's reply to the DIPs' response |
| | (8) Inland Bank and Trust's reply to the DIPs' response |
| | (9) Old Second National's reply to the DIPs' response |
| APPEARANCES: | Justin Mertz - Attorney for the debtors-in-possession |
| | Jerome R. Kerkman - Attorney for the debtors-in-possession |
| | Greg Schrieber - Attorney for the debtors-in-possession |
| | Frank Kaldis - Principal for K&K Holdings, LLC (12-24848) |
| | Joyce Sperling - Employee for the debtors-in-possession |
| | Christopher Cahill - Attorney for BMO Harris Bank, N.A. |
| | Bill Bruss - Attorney for Waterstone Bank SSB |
| | John M. Wirth - Attorney for The Northern Trust Company |
| | Elizabeth Vandesteeg - Attorney for The Northern Trust Company |
| | William McKenna - Attorney for Inland Bank and Trust |
| | Dorothy H. Dey - Attorney for Old Second National Bank |
| | Joy Monahan - Attorney for Old Second National Bank |
| | William Hackney - Attorney for Golden Eagle Community Bank |
| | Debra Schneider - Attorney for the U.S. Trustee |
| LAW CLERK: | Esa Movroydis |

1

TIME:                              2:38 p.m. - 3:58 p.m.
ADJOURNED DATE:         July 12, 2012 at 2:30 p.m., in Room 149

_____

       The Court scheduled this hearing to address the motions for transfer of venue of the cases in K&K Holdings, LLC (12-24848) and in K&K Holdings–1699 Woodfield, LLC (12-24849), and to address whether to grant the DIPs an extension on the interim authorization for use of cash collateral.  The Court noted that BMO Harris Bank, N.A. ("BMO"), Inland Bank and Trust ("Inland"), and Old Second National Bank ("Old Second") each had filed motions for transfer of venue, and that Golden Eagle Community Bank ("Golden Eagle"), and The Northern Trust Company ("Northern") had filed joinder motions for transfer of venue.  The Court further noted that the DIPs had filed a response to the motions.  The Court indicated that it had would address the motions for transfer of venue before addressing any extension on authorization for use of cash collateral.

Transfer of Venue

       Counsel for BMO, counsel for Inland, counsel for Old Second, counsel for Northern, and counsel for Golden Eagle presented oral arguments in favor of a transfer of venue.  Counsel for BMO asserted that the cases would be administered quickly and efficiently in the Northern District of Illinois.  Counsel for Old Second argued that there should be a transfer of venue in the interest of justice; she asserted that the DIPs had filed the Wisconsin-related entities' cases first, solely to ensure that the DIP in 12-24848 would qualify for venue as an affiliate.  She argued that the DIPs should not be allowed to benefit from these actions.  Counsel for Inland asserted that, in the interest of economic administration, the Court should transfer case 12-24848 to the Northern District of Illinois.  Counsel for Northern and counsel for Golden Eagle requested that the Court grant their motions for the reasons cited by the other creditors' counsel.  Counsel for Northern also noted that her motion sought a transfer of all four cases, not just the 12-24848 case.  She argued that because the Court previously had ordered that all four cases would be jointly administered, it should transfer all four cases to the Northern District of Illinois.  All of the creditors' counsel argued that the facts of this case, when analyzed against the factors that courts usually considered when deciding whether to transfer venue of a case, heavily weighed in favor of transferring the venue of the case in 12-24848.

       Counsel for Waterstone Bank ("Waterstone") did not take a position on the transfer of venue of the 12-24848 case, but he did oppose Northern's proposal to transfer all four cases.  He argued that it would be a substantial inconvenience for his client if K&K Holdings–North Ave, LLC (12-24842) was transferred to the Northern District of Illinois.

Document    Page 3 of 6

Counsel for the DIPs argued against a transfer of venue. He argued that the inconvenience to the creditors was not as great as opposing counsel had posited. He acknowledged that Old Second and Golden Eagle were banks local to Illinois and that they might be more inconvenienced if the cases remained in this district; he argued, however, that the same arguments could not be made for BMO, Inland, and Northern. BMO, he argued, was a large banking entity with a strong presence in Wisconsin; Inland's law firm had a local office here in Milwaukee; and Northern had an interest in two properties, one in Wisconsin and the other in Illinois, so venue in this district made just as much sense as venue in Illinois. Counsel further argued that Waterstone was local to Wisconsin, and a transfer of venue would greatly inconvenience that creditor. He asserted that no other interested parties or unsecured creditors had opposed the DIPs' choice of venue; and that any potential witnesses likely would be professionals (appraisers), and such professionals would not be inconvenienced traveling between Chicago and Milwaukee. He argued that the DIP's principal preferred this venue because it was more convenient to travel to downtown Milwaukee than it was to travel to downtown Chicago. Counsel for the DIPs asserted that the creditors had failed to meet their burden in demonstrating that the transfer of venue was proper.

Counsel for the UST did not take a position on the motions to transfer venue.

Counsel for BMO argued that the size of his client should not affect the Court's analysis of whether a transfer of venue was proper. He also argued that the relatively short distance between Milwaukee and Chicago did not weigh in favor of keeping the cases in this district; he cited In re Standard Tank Cleaning Corp., 133 B.R. 562 (Bankr. E.D.N.Y. 1991), where the New York court agreed to transfer the venue of a case only eight miles away to the District of New Jersey. Counsel for Inland argued that his client was local to Illinois, like Old Second and Golden Eagle, and that the Court needed to consider, not whether the venue was convenient for a creditor's law firm, but whether the venue was convenient for the creditor.

After listening to the arguments and reviewing the pleadings and the relevant case law, the Court issued an oral ruling granting the creditors' motions and transferring venue for the cases in 12-24848 and in 12-24849. The Court confirmed that courts typically considered a variety of factors when deciding whether to transfer the venue of a case. It focused on two cases from Seventh Circuit bankruptcy courts: In re West Coast Interventional Pain Medicine, Inc., 435 B.R. 569 (Bankr. N.D. Ind. 2010); and In re DeMert & Dougherty, Inc., 271 B.R. 821 (Bankr. N.D. Ill. 2001). The Court noted that the West Coast case listed a number of factors to consider when deciding whether to transfer venue of a case: (1) proximity of creditors; (2) proximity of the debtors; (3) proximity of witnesses; (4) location of assets; (5) economic administration of the estate; and (6) necessity for

ancillary administration if bankruptcy should result. The court in DeMert discussed three factors: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice. The Court explained that when analyzing the facts of these cases against the lists of factors in both the West Coast and the DeMert cases, the analysis weighed in favor of transferring venue of the cases in 12-24848 and 12-24849 to the Northern District of Illinois. For these reasons and as stated in more detail on the record, the Court granted the creditors' motions for transfer of venue. The Court acknowledged that it previously had entered an order jointly administering all four cases. Based on its ruling today, the Court stated that joint administration would continue only for the two remaining cases, 12-24840 (lead case) and 12-24842. The to-be-transferred cases, 12-24848 and 12-24849, no longer would be subject to the joint administration order and would remain separate unless and until the assigned bankruptcy court in the Northern District of Illinois decided otherwise.

Counsel for Northern asked the Court whether it would be possible to have the dockets of each case reflect the pleadings filed in other cases, so that after the cases were transferred, it still would be possible to access pleadings that had been filed in the transferred cases. The Court said that it would contact the Clerk's Office and request that the docket in 12-24840 include the pleadings filed in the to-be transferred cases, and that the dockets in 12-24848 and 12-24849 include any pleadings that were filed in the cases remaining in this district.

Interim Authorization for Use of Cash Collateral

Based on its decision to transfer venue, the Court indicated that there were two issues it had to address for cash collateral: (1) continuing cash collateral for the cases that would remain in this district; and (2) continuing cash collateral for the cases being transferred to the Northern District of Illinois. The Court stated that it would be logical to extend authorization in the to-be transferred cases to account for the time it would take for the Clerk's Office to transfer the cases and for the cases to be assigned to another judge.

Counsel for the DIPs noted that his office had filed a supplement to the cash collateral motion, which included supplemental budgets. He requested that the Court continue the DIPs' authorization for an additional thirty (30) days, under the terms of the previous order.

Neither counsel for BMO nor counsel for Old Second objected to the requested extension. Counsel for Inland did not object to the requested extension, but noted that his client wished to reserve its right to seek additional adequate protection because, based on the supplemental budgets, he believed that at least one of the properties in which his client had an interest was starting to produce a

4

cash flow. Counsel for Waterstone indicated that the parties had agreed on terms for the DIPs' continued use of his client's cash collateral: he asked the Court to continue authorization under the present order through the end of June, and stated that the parties would submit a proposed order for the terms agreed to starting July 1. Counsel for Golden Eagle did not object to an extension on authorization, but noted that 30 days from today's hearing date would fall on a federal holiday (July 4). Counsel for Northern requested that the Court extend the cash collateral authorization for only a couple of weeks. She stated that the supplemental budgets that the DIPs had submitted had increased the concerns she'd expressed at the previous hearing. She asserted that the budgets demonstrated that there were leasing issues–some leases were set to expire within the month, some renewed lease agreements showed that the leasing price had decreased significantly, and some properties, particularly the Granville property, had a large number of vacancies. She further asserted that she believed that the supplemental budgets showed that the properties in which Northern had an interest were producing even more cash flow than originally indicated, and she argued that the DIPs should increase their adequate protection payments to include principal and interest, as opposed to just interest. She noted that the supplemental budgets showed a decrease in expenses, as well; she argued that it did not make sense for the DIPs to be holding on to these extra funds. She also expressed concern that the DIPs were not providing requested information in a timely manner.

Counsel for the DIPs argued that the DIPs had made their best attempt in providing as much information as possible. He noted that, originally, he had requested more time to prepare the MORs and the budgets because this hearing was to take place only a couple of days after the end of the previous month, meaning that the DIPs would not have everything that they needed to provide complete reports. He agreed with counsel for Northern that there was an issue with vacancy in the Granville property, conceding that the DIPs still had been unable to find a leasing agent for that property. He disagreed that the DIPs should be ordered to pay higher adequate protection payments; he asserted that the DIPs had been operating these properties with minimal funds. He argued that the fact that additional funds might be available was not the standard for granting more adequate protection.

The Court noted that a majority of the creditors' counsel had agreed to the extension on the authorization for the DIPs' interim use of cash collateral. The Court agreed with counsel for the DIPs that additional adequate protection was not required just because there might be additional funds available–that was only one factor for the Court to consider. A more important factor for the Court to consider was whether the DIPs were taking action to preserve the value of the collateral, which the Court believed the DIPs were doing. The Court extended authorization on the DIPs' interim use of cash collateral to July 13, 2012, and it adjourned the

hearing to July 12, 2012 at 2:30 p.m., in Room 149.

      Accordingly, the Court hereby **GRANTS** the motions for transfer of venue filed by BMO Harris Bank, N.A., Inland Bank and Trust, Old Second National Bank.  The Court also **GRANTS** the joinder motions for transfer of venue filed by Golden Eagle Community Bank and The Northern Trust Company.  The Court **GRANTS IN PART** Northern's joinder motion, to the extent that the motion requests a transfer of the cases in 12-24848 (K&K Holdings, LLC) and 12-24849 (K&K Holdings–1699 Woodfield, LLC).  The Court **DENIES** Northern's joinder motion as to the North Avenue and Granville cases.  The Court **VACATES IN PART** the May 11, 2012 joint administration order to the extent that the order includes case numbers 12-24848 (K&K Holdings, LLC) and 12-24849 (K&K Holdings–1699 Woodfield, LLC); case numbers 12-24848 and 12-24849 are no longer subject to the joint administration order, while case number 12-24840 and 12-24842 remain jointly administered.  Finally, the Court **ORDERS** that the May 25, 2012 order authorizing the use of cash collateral on an interim basis is hereby **EXTENDED** through July 13, 2012.

# # # # #